Law Office of Peter D. Hoffman, P.C.
Peter D. Hoffman, Esq.
Yifei He, Esq.
Attorneys for Claimants
200 Katonah Avenue
Katonah, NY   10536
Phone:          (914) 232-2242
Facsimile:      (914) 232-2245

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KA and JAA, Individually, and as Parents and Legal Guardians of JA[1], a minor under the age of 18 years,<br><br>PLAINTIFFS,<br><br>- against -<br><br>North Salem Central School District; North Salem Central School District Board of Education; KA Freeston, Ph.D., Individually and in his capacity as Superintendent; Mary K. Johnson, Individually and in her capacity as Principal of Pequenakonck Elementary School; Michele Grossman, Third Grade Teacher at Pequenakonck Elementary School; Chris Latterner, Social Worker at Pequenakonck Elementary School; and 1-100 unknown employees, agents and assigns of North Salem Central School District and Pequenakonck Elementary School.<br><br>DEFENDANTS. | **COMPLAINT**<br><br>**DOCKET NO.**<br><br>**The Hon.**                 **, USDJ** |

## INTRODUCTION

---

[1] "JA" and other students are not expressly named herein by their given name because of the privacy guarantees provided in the IDEA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. 1232(g) and 34 C.F.R. 99 (hereinafter "FERPA"). Instead students are identified by initials. Plaintiffs KA and JAA are not expressly named herein by their given name because of the privacy guarantees provided in the IDEA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. 1232(g) and 34 C.F.R. 99 (FERPA). Instead Plaintiffs KA and JAA are identified by initials.

1. Plaintiffs' claims arise out of a most egregious form of discriminatory misconduct perpetrated on JA by Student Actors enrolled in the North Salem Central School District, with the knowledge and tacit approval of Defendant North Salem Central School District KA Freeston, Ph.D., individually and in his capacity as Superintendent; Mary K. Johnson, individually and in her capacity as Principal of Pequenakonck Elementary School; Michele Grossman, Third Grade Teacher at Pequenakonck Elementary School; Chris Latterner, individually and in his capacity as Social Worker at Pequenakonck Elementary School; and 1-100 unknown, employees, agents and assigns of North Salem Central School District and Pequenakonck Elementary School;

2. The form of this misconduct was bullying, by both verbal and physical threats and violence. The North Salem Central School District, North Salem Central School District Board of Education, its Superintendent, administrative employees and its teachers were aware of this behavior and did nothing to prevent it or deter it, to the detriment of JA.

3. Defendants' unlawful conduct as against all Plaintiffs is continuing and ongoing;

4. All of the Defendants are jointly and severally liable to Plaintiffs for the injuries suffered as a result of all of the Defendants' conduct;

5. This is an action for damages as a result of all of the Defendants conduct as directed towards each of the Plaintiffs;

## JURISDICTION AND VENUE

6. Jurisdiction is conferred pursuant to 28 U.S.C. §1343(3) and (4) which provides original

jurisdiction in this Court on all suits brought pursuant to 42 U.S.C. §1983 and 28 U.S.C. §1331, which provides jurisdiction to all matters brought pursuant to the United States Constitution and laws of the United States.

7.    In addition, Plaintiffs respectfully request that this Court invoke its supplementary jurisdiction over Plaintiffs' state law causes of action pursuant to 28 U.S.C. §1367(a).

8.    Venue is proper in Westchester County because nearly all of the material events, occurred in Westchester County, upon information and belief all individual defendants either reside and / or are employed in Westchester County, Plaintiffs all reside in Westchester County.

9.    Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper. Rule 65 of the Federal Rules of Civil Procedure authorizes injunctive relief. The Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988. Venue is proper in this action pursuant to 28 U.S.C. § 1391.

10.    Plaintiffs served the Notice of Claim on Defendants, at least thirty days have elapsed since the Notice was filed before said Complaint was filed; and Defendants have neglected or refused to adjust or satisfy the claim, pursuant to Gen. Mun. §50-i(1)(b).

11.    The unlawful discriminatory practices and other violations alleged below were committed within the Southern District of New York.

## PARTIES

12.	Plaintiffs KA and JAA, individually and on behalf of their minor daughter JA, are residents of North Salem, New York.  JA is a student who attended Pequenakonck Elementary School ("PQE") from September 2011 (kindergarten) until June 2015. JA is one of many of other students bullied in the North Salem Central School District. JA now attends Saint Joseph School, a private School located in Danbury, Connecticut.  Plaintiff KA is JA's father. KA is a North Salem Highway Department Worker. Plaintiff JAA is JA's mother. JAA is a Nurse. Plaintiffs KA, JAA and JA have been victims of bullying and its lasting effects at the hands of the North Salem Central School District.

13.	Defendant North Salem Central School District (hereinafter "NSCSD") is a local school district, which serves students living within the towns of North Salem, Purdys, Croton Falls, Brewster, State of New York, with its administrative offices located at 173 June Road North Salem, NY 10560.

14.	Defendant North Salem Central School District Board of Education (hereinafter "NSCSD BOE" or "BOE") is the board of education for the above mentioned NSCSD, located at 230 June Rd, North Salem, NY 10560.

15.	Defendant KA Freeston ("Freeston") is the duly appointed Superintendent of the NSCSD. He is sued in his individual and official capacities.

16.	Defendant Mary K. Johnson ("Johnson") is the duly appointed Principal of PQE. She is sued in her individual and official capacities.

17.	Defendant Michele Grossman ("Grossman"), is the Third Grade Teacher of PQE. She is sued in her individual and official capacities.

18.    Defendant Chris Latterner ("Latterner"), is the Social Worker at PQE. He is sued in his individual and official capacities.

19.    Unknown and unnamed agents and assigns of NSCSD.  At all relevant times Unknown Defendant agents and assigns were acting under color of state law and within the scope of their capacity as employees of NSCSD.

## FACTS

20.    Claimant JA is a minor born on June 11, 2006;

21.    Claimant JA is a student within the North Salem Central School District;

22.    Claimant JA was a registered student with the Defendant school district and attended Pequenakonck Elementary School (hereinafter "POES") during the 2014-2015 school year;

23.    JA was born with a condition called P.H.A.C.E Syndrome. As a result of this syndrome JA was born missing the left half of her cerebellum, multiple vascular abnormalities and a large segmental hemangioma on her left face and scars;

24.    JA's hemangioma covered the whole left side of her face and grew very rapidly over the first month of life. This caused extensive ulcerations and bleeding. Because of the rapid growth of the hemangioma along with the ulcerations, JA lost most of her nose, all of her top lip, and had deep red discoloration and open wounds on the whole left side of her face;

25.    JA underwent multiple laser and reconstructive procedures to make her look as normal as possible, but still to this day, she has extensive scarring on the left side of her face and nose;

26.     JA will require ongoing reconstructive surgeries throughout the remainder of her life;

27.     Along with the P.H.A.C.E. syndrome, JA also suffers from Moyamoya Disease. This disease has caused her internal carotid arteries to close inside the brain. As a result of the closing of the arteries, she has had multiple strokes, transient ischemic attacks ("TIA's") and suffers from severe migraines with vomiting;

28.     JA has already had two brain surgeries to vascularize the left and right sides of her brain;

29.     JA is hearing impaired;

30.     JA is visually impaired;

31.     JA is a person with multiple disabilities and this is known to all Defendants;

32.     JA has a Section 504 Accommodation Plan at POES identifying her as a student with a physical or mental impairment that substantially limits a major life activity;

33.     At all times, Defendant employees, including but not limited to KA Freeston, Superintendent of Schools, Mary K. Johnson, Principal at Pequenakonck Elementary School; Michele Grossman, Third Grade Teacher at Pequenakonck Elementary School; Chris Latterner, Social Worker; and 1-100 unknown agents and assigns of North Salem Central School District had a duty to train, credential, re-credential, and to supervise employees in accordance with New York State's Dignity for All Students Act (hereinafter "DASA"), as well as Defendants' own DASA policies. This duty was breached, directly and proximately resulting in JA's severe emotional, psychological and physical injuries that are continuing and ongoing;

34.   At all times prior to the beginning of and during the 2014-2015 school year, Defendants, including but not limited to employee KA Freeston, Superintendent of Schools, Mary K. Johnson, Principal Pequenakonck Elementary School; Michele Grossman, Third Grade Teacher at Pequenakonck Elementary School; Chris Latterner, Social Worker; and 1-100 unknown agents and assigns of North Salem Central School District had a duty to follow known Defendant DASA policies, procedures, protocols and regulations concerning bullying and harassment. This duty was breached directly and proximately resulting in Petitioners' severe emotional, psychological and physical injuries that are continuing and ongoing;

35.   On or about March 8, 2015, the parents of JA were informed by a parent in JA's third grade classroom, that JA has been the subject of severe, pervasive, objectively offensive and ongoing harassment, discrimination, bullying, verbal threats, intimidation, and abuse by JA's peers, including but not limited to JP, RB, RV and IP,[1] students at PQES throughout the 2014-2015 school year since it began in September 2014;[2]

36.   On or about March 8, 2015, the parents of JA were informed by said parent in JA's third grade classroom that beginning in October 2014, JP, a male student in JA's third grade classroom, started "The Germ Game," wherein JP told other students not to speak or be friends with JA because she had germs;

---

[1] Under appropriate and agreed to privacy considerations between the parties, the claimants will disclose the names so far listed anonymously.

[2] On or about March 6, 2015, JA told her parents that she had no friends, she felt invisible and she wanted to jump off a bridge; JA's parents had no idea why JA was stating these things because at that time, they had no knowledge of any that JA was being bullied at PQES.

37.    On or about March 8, 2015, JA informed her parents about "The Germ Game" and that this harassment began in October 2014;

38.    On or about March 8, 2015, the parents of JA were informed by a parent in JA's third grade classroom that beginning in November 2014, JP, a male student in JA's third grade classroom, would repeatedly sing the song "Rudolph the Red Nosed Reindeer" to JA because of her physical appearance;

39.    On or about March 8, 2015, JA told her parents that JP repeatedly sang the song "Rudolph the Red Nosed Reindeer" to JA because of her physical appearance, that that this harassment and intimidation was ongoing from November 2014 through December 2014;

40.    On or about March 8, 2015, the parents of JA were informed by a parent in JA's third grade classroom, that this parent and other parents with students in JA's classroom had reported, either verbally and/or via email, to Defendants Mary K. Johnson (Principal at PQES), Michele Grossman (JA's third Grade Teacher at PQES), and Chris Latterner (Social Worker at PQES), that JA was being continually bullied, harassed and intimidated by JP (a male student in JA's third grade class), and RB (a male student in JA's third grade class) during the 2014-2015 school year;

41.    On or about March 8, 2015, JA's parents discovered a journal in JA's room wherein, JA wrote, to wit, "I Problems In My Life; Chapter 1; #1: I feel invisible. #2: I got picked on. #3 I never have anyone to play with. #4: I can never tell my parents what is wrong;"

42.     On or about March 9, 2015, KA and JAA had a meeting with Defendant Principal Mary K. Johnson at PQES, and showed Defendant Johnson JA's journal and informed Defendant Johnson of the information that they learned about the harassment and discrimination against JA (detailed in the aforementioned paragraphs);

43.     On or about March 9, 2015, Defendant Johnson informed KA and JAA that she was not aware that JA has been harassed at all during the 2014-2015 school year, and she will investigate their claims and get back to them;

44.     On or about March 9, 2015, KA and JAA had a meeting with Defendant Michele Grossman, JA's third grade teacher at PQES, to inform Defendant Grossman of the information that they learned about the harassment against JA (detailed in the aforementioned paragraphs);

45.     On or about March 9, 2015, Defendant Grossman informs KA and JAA that she was not aware that JA has been harassed at all during the 2014-2015 school year, and she will investigate their claims and get back to them;

46.     On or about March 10, 2015, Defendant Johnson requested that KA and JAA bring JA to be questioned about the matter;

47.     On or about March 10, 2015, KA and JAA brought JA to PQES to be questioned by Defendants. Defendants asked JA leading questions. JA felt intimidated and uncomfortable and did not admit that she was being bullied by her peers.

48.     After questioning JA about the bullying, Defendant Johnson informed KA and JAA that she believed that JA was exaggerating the reports of bullying because of JA's "neurological deficit;"

49.     As a result of this "investigation," JP, one of the chief male students who has bullied JA throughout the entire 2014-2015 school year, was given two (2) days of in-school suspension;

50.     However, JA observed JP "running errands" for teachers while he was serving his "in school suspension," and she felt fear and intimidation by JP's presence in the school during a time in which he was supposed to have been disciplined by Defendants for his actions;

51.     On or about March 11, 2015, KA and JAA learned from a second parent with a child in JA's third grade classroom that on or about September 20, 2014 this parent emailed Defendant Grossman to report that RB, a male student in JA's third grade classroom, was continually asking JA what was wrong with her face;

52.     On or about March 11, 2015, KA and JAA learned from a third parent with a child in JA's third grade classroom that on or about October 24, 2014, this parent emailed Defendant Grossman to report her concerns about the fact that this parent's child was very upset by the "unkind behaviors and comments directed towards" JA. This parent went on to report that there seems to be a "hostile dynamic" that is traumatic for her own child and likely for JA;

53.     On or about March 11, 2015, JAA sent an email to Defendant KA Freeston, Superintendent of the North Salem Central School District, to report that JA has been the subject of "extreme bullying" at PQES that has been going on since September 2014, and has been reported to Defendants Johnson, Grossman, and Latterner by other parents since the beginning of the 2014-2015 school year, but was only brought to JAA's attention on March 8, 2015;

54.     On or about March 11, 2015, JAA emailed Defendant Johnson about her concerns for JA once JP returned to school after his in-school suspension concluded, and about what safety measures were being put into place to protect JA from bullying, harassment and intimidation by JP;

55.     On or about March 12, 2015, Defendant Freeston responded to JAA, via email, requesting that they meet to discuss this issue on March 13, 2015;

56.     On or about March 12, 2015, Defendant Johnson sent a letter (via email) to JAA wherein Defendant Johnson noted that the following plan would be put into place: "Chris Latterner, PQES Social Worker, will be meeting with [JA] twice each cycle ... We will add an additional individual counseling session each cycle with Mr. Latterner. Chris Latterner will also be conducting weekly class meetings with Mrs. Grossman with the purpose of supporting the needs of all of the students in the class. The need for this intervention will be re-evaluated after three weeks in collaboration with the teachers/professionals who work with this class and myself. Additional supervision in the classroom will be in place beginning on Friday for at least three weeks to support the students and Mrs. Grossman;"

57.     Upon information and belief, this plan did nothing to stop the harassment, intimidation, threats or discrimination directed towards JA by her peers;

58.     On or about March 12, 2015, JA's parents learn from JA that RB threatened JA that same day and stated to her "I have a bullet for you;"

59.     On or about March 19, 2015, JAA received a voicemail from Defendant Grossman that there was an incident in the cafeteria at PQES at lunch that day between JA and JP, wherein JP would not allow any other student to speak to JA

and JP would scream in JA's face every time JA attempted to speak to another student at the lunch table;

60.    On or about March 19, 2015, JAA informed Defendant Freeston about the above-mentioned incident via email;

61.    On or about March 21, 2015, JA's parents learned from JA that sometime between March 16, 2015, and March 20, 2015, JA was on the bus with IP, a female student at PQES and the sister of JP, wherein IP told JA that she wanted to punch JA in her glasses;

62.    On or about March 23, 2015, in the morning, while JA was getting ready to take the bus to school, JA was with her mother, JAA, and JA was visibly upset and fearful, and did not want to take the bus, after which JA had what JA's parents believe to have been a grand mal seizure. After the seizure, JA was admitted to Maria Fareri Children's Hospital at Westchester Medical Center (hereinafter "WMC"), in Valhalla, New York;

63.    While JA was hospitalized on March 23, 2015, she was completely incoherent that entire day;

64.    On or about March 24, 2015, KA informed Ms. Donna De Meo, the school nurse at PQES, that JA was in the hospital after having what her parents believe to have been a grand mal seizure;

65.    JA was hospitalized for three (3) days and two (2) nights at WMC and was released on March 25, 2015;

66.    On or about May 6, 2015, JAA received a telephone call from Defendant Grossman that there was an incident at lunch involving JA and RV, a male

student in JA's class, wherein RV was saving a seat for JP at the lunch table, and when JA attempted to sit at the lunch table with RV, RV threatened to dump JA's lunch tray in her underpants if she took JP's seat at the lunch table;

67. Upon information and belief, this incident on May 6, 2015, caused JA to suffer humiliation and embarrassment;

68. On or about May 6, 2015, JAA reported the above-detailed incident to Defendant Johnson and Defendant Freeston via email;

69. On or about May 9, 2015, JA asked her mother, JAA, for $100. When JAA asked JA why she needed it, JA stated that she needed to bring it to school on Monday (May 11, 2015), and when JA asked why, JA stated that "RV told me yesterday (May 8, 2015) that I need to bring him money on Monday or he said he will go nuts on me!";

70. Upon information and belief, JA was visibly upset and crying;

71. Upon information and belief, JA was fearful, and did not want to return to school on May 11, 2015, without the money for RV for fear for her safety;

72. Upon information and belief, JA was fearful that her parents would tell Defendants about this incident because JA believed that if Defendants knew about the extortion, then RV would harm JA at school, and as a result, JA was fearful and did not want to attend school on May 11, 2015;

73. JA's extortion at school alongside JA's fears, were deeply upsetting to JA's parents;

74.  On May 10, 2015, JA's parents reported this latest incident of harassment, intimidation, threats of physical abuse, humiliation and now extortion, to Defendant Johnson via email;

75.  On May 14, 2015, JA's parents met with Defendant Johnson about RV's threat to JA that he would "go nuts on her" if she failed to bring him money. During this meeting, JAA asked Defendant if there would be a DASA investigation because of the pervasive bullying that JA was being subjected to, and, upon information and belief, Defendant Johnson replied that the actions detailed herein are not bullying, but rather, are "unkind behavior," and there would be no DASA investigation on this or any matter;

76.  On June 17, 2015, even after claimants personally served the underlying Notice of Claim on Defendants, JA was once again subjected to peer harassment by JP, to which Defendants were deliberately indifferent;

77.  On June 17, 2015, inside of the computer lab at Pequenakonck Elementary School, JA was seated in her assigned seat, which was directly next to JP, a seat that was assigned to her by Defendants;

78.  Upon information and belief, JP harassed JA by asking her, repeatedly, what was wrong with her face and nose, and why one nostril is higher than the other;

79.  Upon information and belief, JA was embarrassed, humiliated and visibly upset by JP's actions;

80.  Upon information and belief, after this incident, JA asked her parents if she could see a surgeon to have her nose fixed;

81.    On or about June 19, 2015, JA's mother reported the June 17, 2015, incident of harassment to Defendant Freeston (via email), and reiterated her previous request that Defendants put together a plan to ensure JA's safety, and to make sure that JP stays away from JA;

82.    To date, Defendants have failed to respond in any way to JA's June 19, 2015, claim of peer harassment;

83.    As a matter of fact, Defendants aggravated the situation by putting JP in extra help sessions with JA;

84.    On or about, June 22, 2015, the parents of JA received a report from Mr. John Veteri, an employee of Defendant School District and JA's adaptive physical education teacher, dated June 15, 2015, wherein in retaliation to JAA's and KA's complaints, Mr. Veteri referred to JA as "bossy," a term that discriminates against JA because of her gender;

85.    Upon information and belief, on several occasions including but not limited to, March 11, 2015; March 12, 2015; March 19,2015; March 23, 2015; May 6, 2015; May 10, 2015; and June 19, 2015, JA's parents notified Defendants, in writing, of the continued peer harassment of JA by other students at Pequenakonck Elementary School, and Defendants failed to adequately respond to the harassment;

86.    Defendants acted with deliberate indifference to the severe, pervasive, and objectively offensive peer harassment of JA, which was ongoing during the 2014-2015 school year;

87. These incidents of discrimination, retaliation, threats, harassment, intimidation, abuse, extortion and the unpunished acts of the student perpetrators are ongoing and continuing;

88. Since September 2014, including but not limited to employee KA Freeston, Superintendent of Schools, Mary K. Johnson, Principal Pequenakonck Elementary School; Michele Grossman, Third Grade Teacher at Pequenakonck Elementary School; Chris Latterner, Social Worker; and unknown agents and assigns of North Salem Central School District, had a duty to follow known Federal, State, and Defendant School District policies, procedures, protocols and regulations concerning the Dignity of All Students Act and anti-bullying policies. This duty was breached directly and proximately resulting in claimants' severe and permanent injuries that are continuing and ongoing;

89. The Defendants' response to the bullying of JA, a student with a disability, was grossly and unlawfully negligent;

90. The Defendants' deliberately indifferent response to the reports of severe, pervasive and objectively offensive peer harassment of JA was woefully inadequate;

91. Upon information and belief, Defendants have willfully and wantonly failed to commence a DASA investigation with regard to intimidation, harassment, threats, discrimination and abuse that JA, a disabled student, has suffered at the hands of her peers at PQES throughout the 2014-2015 school year in violation of New York State Education Law Article 2, Dignity of All Students Act;

92. All of the above created a Hostile Education Environment for JAA;

93.     Due to the hostile educational environment and extreme risk of harm, Plaintiffs were compelled to educationally place outside of the district in September 2015.

94.     The dangerously hostile school environment was and is pervasive, ongoing and continuing.

95.     The injuries suffered by JA and her parents KA and JAA are ongoing and continuing, as JA still cannot safely attend Defendants' schools. KA and JAA's injuries are financial, as they were compelled to privately place JA in a different school for her own safety, and emotional, as they have been forced to watch their daughter, JA, suffer bullying and harassment that was severely damaging to JA.

## COUNT I: DISCRIMINATION AND VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1972

96.     Plaintiffs repeat, reiterate and re-allege each and every allegation in the preceding paragraphs of the within Complaint, with the same force and effect as though each were more fully set forth at length herein, and further allege as follows;

97.     No qualified individual with a disability shall, by reason such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity. Americans with Disabilities Act, 42 U.S.C. §12132;

98.     Plaintiff suffers from disabilities, as described herein. JA is a protected person under the Rehabilitation Act of 1972, 29 USC §794 et seq.;

99.     NSCSD is an entity described by the Rehabilitation Act of 1972 because it receives federal funding of its operations and activities;

100.    42 USC §1983 grants plaintiffs a private right of action for violation of the Rehabilitation Act of 1972;

101.    In committing the acts and omissions described herein, Defendants (in their official capacities), and each of them, have acted in bad faith, with gross misjudgment and deliberate indifference and have thereby intentionally discriminated against JA solely on the basis of her disability by denying her the benefits of school in violation of Section 504 and, furthermore, have retaliated against JA for the advocacy for her rights by herself and her parents, also in violation of Section 504;

102.    As a result of the conduct of the Defendants, Plaintiffs have been compelled to, including, but not limited to, seek treatment from health professionals, pay for said treatment, pay attorneys' fees and costs as well as pay for placement of JA in a safe school setting;

103.    Plaintiffs suffer and continue to suffer damages, including but not limited to, loss of reputation, loss of opportunity, anxiety, emotional distress, humiliation, fear for safety, medical expenses, professional fees, and loss of funds to pay attorneys' fees unnecessarily expended and continuing to be expended as a result of Respondents' illegal conduct;

104.    By reason of the foregoing, Plaintiffs were and continue to be damaged as against each of the Defendants for a sum excess of all jurisdictional limits. Defendants are jointly and severally liable in damages and other relief as set forth herein.

## COUNT II: DISCRIMINATION AND VIOLATION OF THE AMERICANS WITH DISABILITY ACT

105.    Plaintiffs repeat, reiterate and re-allege each and every allegation in the preceding paragraphs of the within Complaint, with the same force and effect as though each were more fully set forth at length herein, and further allege as follows.

106.    JA is a protected person under the Americans With Disabilities Act, 42 USC §12101 et seq., 42 USC §12102(1)(C) (the "ADA").

107.    42 USC §1983 grants plaintiffs a private right of action for violation of the ADA.

108.    In committing the acts and omissions described herein, Defendants (in their official capacities), and each of them, have acted in bad faith, with gross misjudgment and deliberate indifference and have thereby intentionally discriminated against JA solely on the basis of her disability by denying her the benefits of school in violation of Title II of the ADA.

109.    In effect, the conduct of the Defendants and their deliberate indifference bars JA from the Defendants' school(s);

110.    As a result of the conduct of the Defendants, Plaintiffs have been compelled to, including, but not limited to, seek treatment from health professionals, pay for said treatment, pay attorneys' fees and costs as well as pay for placement of JA in a safe school setting;

111.    Plaintiffs suffer and continue to suffer damages, including but not limited to, loss of reputation, loss of opportunity, anxiety, emotional distress, humiliation, fear for safety, medical expenses, professional fees, and loss of funds to pay attorneys' fees unnecessarily expended and continuing to be expended as a result of Respondents' illegal conduct;

112.    By reason of the foregoing, Plaintiffs were and continue to be damaged as against each of the Defendants for a sum excess of all jurisdictional limits. Defendants are jointly and severally liable in damages and other relief as set forth herein.

**COUNT III: RETALIATION AS PURSUANT TO THE REHABILITATION ACT, INDIVIDUALS WITH DISABILITIES EDUCATION ACT AND THE AMERICANS WITH DISABILITY ACT**

113.    Plaintiffs reallege and reaffirm each and every allegation set forth in all above paragraphs as if fully restated herein;

114.    The Americans with Disabilities Act, 42 U.S.C. § 12132 et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Individuals with Disabilities Act, 20 U.S.C. §1400, et. seq., have a prohibition against retaliation, and the Defendants' punitive and retaliatory conduct is such a violation as it concerns each of these statutes;

115.    Plaintiffs' disabled children and Plaintiffs individually are the beneficiaries of federal funding subject to section 504 of the Rehabilitation Act, 29 U.S.C. §701, et. seq., the Individuals with Disabilities Education Act, 20 U.S.C. §1400,. et. seq., and Americans with Disabilities Act 42 U.S.C. §12132.

116.    KA and JAA were engaged in a protected activity, complaining about JA's Bullying, filing a DASA and Notice of Claim, as pursuant to *inter alia* Section 504, the ADA, and the IDEA;

117.    There is more than a casual connection between KA and JAA complaining about bullying and then filing a DASA and Notice of Claim and the Defendants' continued retaliatory and punitive treatment of JA;

118.    The Defendants' conduct here was outrageous and meant to dissuade Plaintiffs KA and JAA in their effort to foster a safe and welcoming educational environment for JA, in that Defendants engaged in acts demeaning JA, for

example, assigning a lab seat for JA right next to JP, making derogatory statements about JA, remaining indifferent about bullying towards JA;

119.    KA and JAA were involved in the protected activity of advocating for their disabled children in an effort to secure a safe and welcoming educational environment and the Defendants were certainly aware of the same;

120.    As described in detail above, Plaintiffs have been retaliated against and this retaliation had an adverse effect;

121.    There is a casual connection between JAA's and KA's advocacy and the retaliation;

122.    As a result of the conduct of the Defendants, Plaintiffs have been compelled to, including, but not limited to, seek treatment from health professionals, pay for said treatment, pay attorneys' fees and costs as well as pay for placement of JA in a safe school setting;

123.    Plaintiffs suffer and continue to suffer damages, including but not limited to, loss of reputation, loss of opportunity, anxiety, emotional distress, humiliation, fear for safety, medical expenses, professional fees, and loss of funds to pay attorneys' fees unnecessarily expended and continuing to be expended as a result of Respondents' illegal conduct;

124.    By reason of the foregoing, Plaintiffs were and continue to be damaged as against each of the Defendants for a sum in excess of all jurisdictional limits. Defendants are jointly and severally liable in damages and other relief as set forth herein.

**COUNT IV: FAILURE TO PREVENT BULLYING OF JA AS PURSUANT TO THE DIGNITY FOR ALL STUDENTS ACT, NEW YORK EDUCATION LAW, ARTICLE 2 §§ 12-16**

125.    Plaintiffs repeat, reiterate and re-allege each and every allegation in the preceding paragraphs of the within Complaint, with the same force and effect as though each were more fully set forth at length herein, and further allege as follows.

126.    DASA provides that, "[n]o student shall be subjected to harassment by employees or students on school property or at a school function; nor shall any student be subjected to discrimination based on a person's ... disability ... on school property or at a school function." New York Education Law, Article 2 §§ 12.

127.    DASA also provides that, "The board of education and the trustees or sole trustee of every school district shall create policies and guidelines that shall include, but not be limited to: Policies intended to create a school environment that is free from discrimination or harassment..." New York Education Law, Article 2 §§ 13;

128.    Plaintiff suffers from disabilities, as described herein. JA is a protected person under DASA.

129.    In committing the acts and omissions described herein, NSCSD violated the DASA when school officials discriminated and/or tolerated discrimination of JA based on her actual or perceived disability.

130.    In committing the acts and omissions described herein, Defendants (in their official capacities), and each of them, have acted in bad faith, with gross misjudgment and deliberate indifference and have thereby intentionally discriminated against JA solely on the basis of her disability by denying her the benefits of school in violation of DASA.

131.    As a result of the conduct of the Defendants, Plaintiffs have been compelled to, including, but not limited to, seek treatment from health professionals, pay for

said treatment, pay attorneys' fees and costs as well as pay for placement of JA in a safe school setting;

132. Plaintiffs suffer and continue to suffer damages, including but not limited to, loss of reputation, loss of opportunity, anxiety, emotional distress, humiliation, fear for safety, medical expenses, professional fees, and loss of funds to pay attorneys' fees unnecessarily expended and continuing to be expended as a result of Respondents' illegal conduct;

133. By reason of the foregoing, Plaintiffs were and continue to be damaged as against each of the Defendants for a sum excess of all jurisdictional limits. Defendants are jointly and severally liable in damages and other relief as set forth herein.

## COUNT V: NEGLIGENT SUPERVISION

134. Plaintiffs repeat, reiterate and re-allege each and every allegation in the preceding paragraphs of the within Complaint, with the same force and effect as though each were more fully set forth at length herein, and further allege as follows.

135. Defendants has a duty to act *in loco parentis,* that is, to act as the parent in the parents' absence.

136. Defendants breached their duty *in loco parentis* when they failed to use the same degree of care and supervision over the pupils under its control as a reasonably prudent parent would have used under the same circumstances.

137. Defendants had prior knowledge and repeated notice of the bullying, harassment and violence directed at JA, thus the continuing acts of the Student Actors against JA should reasonably have been anticipated.

138. A reasonably prudent parent would have taken into consideration, the age of the non-Plaintiff Student Actors, the well known fact that certain students were harassing and committing acts of violence against JA, and what instruction, if any, had been given to the pupils with respect to bullying JA and bullying in general.

139. These factors would have led a reasonably prudent parent to require additional supervision of the students in their care to prevent bullying, harassment, intimidation, and threats and acts of violence.

140. However, Defendants failed to adequately supervise the Student Actors in its care, to intervene or take preventive measures to protect Plaintiff JA and by ignoring the harassment and violent behavior, and allowing bullying against JA to continue.

141. Plaintiffs injuries were foreseeable and proximately related to the absence of adequate supervision on behalf of Defendants.

142. As a result of the conduct of the Defendants, Plaintiffs have been compelled to, including, but not limited to, seek treatment from health professionals, pay for said treatment, pay attorneys' fees and costs as well as pay for placement of JA in a safe school setting;

143. Plaintiffs suffer and continue to suffer damages, including but not limited to, loss of reputation, loss of opportunity, anxiety, emotional distress, humiliation, fear for safety, medical expenses, professional fees, and loss of funds to pay attorneys' fees unnecessarily expended and continuing to be expended as a result of Respondents' illegal conduct;

144.    By reason of the foregoing, Plaintiffs were and continue to be damaged as against each of the Defendants for a sum in excess of all jurisdictional limits. Defendants are jointly and severally liable in damages and other relief as set forth herein.

## COUNT VI: NEGLIGENT HIRING

145.    Plaintiffs repeat, reiterate and re-allege each and every allegation in the preceding paragraphs of the within Complaint, with the same force and effect as though each were more fully set forth at length herein, and further allege as follows.

146.    Defendants had a duty to exercise reasonable care in hiring employees of the NSCSD School District in general and Pequanacock Elementary School in particular, to find out whether they were competent to do their work without danger of harm to others.

147.    NSCSD staff was completely incompetent to handle the situation of JA's bullying, and essentially did nothing to remediate it.

148.    NSCSD did not have an overriding plan, policy, or procedure disseminated to all employees in a coordinated effort to prevent bullying.

149.    Further Defendants breached their duties of reasonable care when they knew of facts that would lead a reasonably prudent person to conduct an investigation which could have uncovered the information regarding the employees' failure to correct the bullying problem, and yet they failed to do so.

150.    Due to the Defendants breach of their duties, JA was subjected to bullying, harassment, intimidation, and threats and acts of violence from her classmates.

151.    Plaintiffs injuries were foreseeable and proximately related to Defendants' negligent hiring and absence of adequate training of its employees.

152.    As a result of the conduct of the Defendants, Plaintiffs have been compelled to, including, but not limited to, seek treatment from health professionals, pay for said treatment, pay attorneys' fees and costs as well as pay for placement of JA in a safe school setting;

153.    Plaintiffs suffer and continue to suffer damages, including but not limited to, loss of reputation, loss of opportunity, anxiety, emotional distress, humiliation, fear for safety, medical expenses, professional fees, and loss of funds to pay attorneys' fees unnecessarily expended and continuing to be expended as a result of Respondents' illegal conduct;

154.    By reason of the foregoing, Plaintiffs were and continue to be damaged as against each of the Defendants for a sum in excess of all jurisdictional limits. Defendants are jointly and severally liable in damages and other relief as set forth herein.

## COUNT VII NEGLIGENT TRAINING

155.    Plaintiffs reallege and reaffirm each and every allegation set forth in all above paragraphs as if fully restated herein;

156.    As bullying is a common problem in New York schools, Defendants have a duty to train their staff in effectively handling bullying situations.

157.    Defendants breached their duty of care to reasonably train employees about bullying;

158.    Defendants breached their duties of reasonable care as it should have known that, without any training, the employees who were supposed to provide care to JA were completely incompetent to prevent or remediate bullying.

159. It was foreseeable that Defendants' lack of training of employees about bullying would result in harm and did result in harm to JA;

160. The harm suffered as a result of negligent training that allowed JA to be bullied was a direct and proximate cause of the harm suffered by JA;

161. As a result of the conduct of the Defendants, Plaintiffs have been compelled to, including, but not limited to, seek treatment from health professionals, pay for said treatment, pay attorneys' fees and costs as well as pay for placement of JA in a safe school setting;

162. Plaintiffs suffer and continue to suffer damages, including but not limited to, loss of reputation, loss of opportunity, anxiety, emotional distress, humiliation, fear for safety, medical expenses, professional fees, and loss of funds to pay attorneys' fees unnecessarily expended and continuing to be expended as a result of Respondents' illegal conduct;

163. The Plaintiffs have suffered damages financially, emotionally and educationally;

164. By reason of the foregoing, Plaintiffs were and continue to be damaged as against each of the Defendants for a sum in excess of all jurisdictional limits. Defendants are jointly and severally liable in damages and other relief as set forth herein;

## COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

165. Plaintiffs repeat, reiterate and re-allege each and every allegation in the preceding paragraphs of the within Complaint, with the same force and effect as though each were more fully set forth at length herein, and further allege as follows.

166. JA is a member of a fragile class, a child with significant disabilities, and by external appearances seems vulnerable. Defendants, as educators and caretakers,

had a duty to protect JA from harassment, bullying, threats and physical violence from her classmates.

167.    However, Defendants exhibited a pattern of causing and/or failing to address the ongoing extreme verbal and physical threats and abusive behavior toward JA by her classmates.

168.    Defendants' conduct was done with the intent to cause, or in disregard of a substantial probability of causing, severe emotional distress to JA.

169.    Defendants' actions and inactions are extreme and outrageous conduct exceeding all reasonable bounds of decency.

170.    Defendants' conduct was the direct and proximate cause of Plaintiffs' severe emotional distress.

171.    JA's emotional distress was severe in that it was of such intensity and duration that no reasonable student should be expected to endure it. Such distress caused JA to have *inter alia* a grand mal seizure.

172.    As a result of the conduct of the Defendants, Plaintiffs have been compelled to, including, but not limited to, seek treatment from health professionals, pay for said treatment, pay attorneys' fees and costs as well as pay for placement of JA in a safe school setting;

173.    Plaintiffs suffer and continue to suffer damages, including but not limited to, loss of reputation, loss of opportunity, anxiety, emotional distress, humiliation, fear for safety, medical expenses, professional fees, and loss of funds to pay attorneys' fees unnecessarily expended and continuing to be expended as a result of Respondents' illegal conduct;

174.    By reason of the foregoing, Plaintiffs were and continue to be damaged as against each of the Defendants for a sum in excess of all jurisdictional limits. Defendants are jointly and severally liable in damages and other relief as set forth herein.

## COUNT IX: ASSAULT

175.    Plaintiffs repeat, reiterate and re-allege each and every allegation in the preceding paragraphs of the within Complaint, with the same force and effect as though each were more fully set forth at length herein, and further allege as follows.

176.    The Plaintiff JA has suffered assaults due to the action and inactions of the Defendants.

177.    Student actors had the real and apparent ability to bring about harmful or offensive bodily contact. Such occasions include, March 6, 2015 RV threatening to dump his lunch tray down JA's underpants, March 12, 2015, RB threatening JA with "I have a bullet for you," March 21, 2015, IP stating she would punch JA in her glasses.

178.    As a direct and proximate result of Students' actions, JA suffered a grand mal seizure on March 23, 2015, for which she was admitted to Westchester Medical Center.

179.    NSCSD and its employees, representatives, agents, servants and assigns were well aware of students' actions towards JA.

180.    Defendants has a duty to act *in loco parentis,* that is, to act as the parent in the parents' absence.

181.    Defendants breached their duty *in loco parentis* when they failed to intervene or take preventive measures to protect Plaintiff JA and by ignoring the harassment

and violent behavior, allowing bullying to continue, and denying JA of her right to be free from assault and battery.

182.    The Defendants' actions and inactions were done with the intent to cause, or disregard of a substantial probability of causing, and did in fact cause, assault and battery against JA.

183.    Defendants' inadequate supervision and failure to address the known incidents of verbal and physical threats resulted in Plaintiff JA being assaulted and was a foreseeable result of their inadequate supervision, and their conduct of actions and inactions.

184.    As a result of the conduct of the Defendants, Plaintiffs have been compelled to, including, but not limited to, seek treatment from health professionals, pay for said treatment, pay attorneys' fees and costs as well as pay for placement of JA in a safe school setting;

185.    Plaintiffs suffer and continue to suffer damages, including but not limited to, loss of reputation, loss of opportunity, anxiety, emotional distress, humiliation, fear for safety, medical expenses, professional fees, and loss of funds to pay attorneys' fees unnecessarily expended and continuing to be expended as a result of Respondents' illegal conduct;

186.    By reason of the foregoing, Plaintiffs were and continue to be damaged as against each of the Defendants for a sum in excess of all jurisdictional limits. Defendants are jointly and severally vicariously liable in damages and other relief as set forth herein.

187.    By reason of the foregoing, Plaintiffs were and continue to be damaged as against each of the Defendants in ways that cannot be compensated by financial recompense.

## PUNITIVE DAMAGES

188.    That Plaintiffs repeat, reiterate and re-allege each and every allegation in the preceding paragraphs of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

189.    That at all times mentioned herein, Defendants had a duty to properly train, supervise and monitor its employees, agents, representatives, servants and assigns, and to monitor, supervise, educate and discipline its students, to prevent discrimination, harassment, intimidation, violence and threats of violence and other violations of law.

190.    Defendants failed to protect Plaintiff JA from harassment and bullying, intimidation, violence and threats of violence and other violations.

191.    Upon information and belief, the failure on the part of Defendants to train, supervise and monitor its employees, agents, representatives, servants and assigns, and to monitor, supervise, educate and discipline non-Plaintiff Student Actors, did cause irreparable harm to Plaintiffs.

192.    That at all times herein mentioned, Defendants intentionally, wantonly, fraudulently and/or wrongfully concealed from the Plaintiffs, and the Class members that Defendants were not properly training, supervising and monitoring its employees, agents, representatives, servants and assigns, or monitoring, supervising, educating and disciplining its students.

193.     That at all times herein mentioned, Defendants intentionally, wantonly, fraudulently and/or wrongfully withheld information from Plaintiffs and Class members, that Defendants were not properly training, supervising and monitoring its employees, agents, representatives, servants and assigns, or monitoring, supervising, educating and disciplining its students, and that Plaintiffs and Class members were at risk of exposure to harassment and bullying, intimidation, violence and threats of violence and other violations.

194.     That by reason of all of the foregoing, the Defendants were grossly negligent and acted in wanton disregard of the well-being of the Plaintiffs.

195.     That the above conduct involves moral turpitude, was reprehensible, shocks the public conscious and demonstrated a gross, wanton, depraved indifference and/or deliberate and reckless disregard for the safety of Plaintiffs and Class members.

## JURY DEMAND

196.     Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them as follows:

1.     Declare that Defendants' actions and inactions, including Defendants' perpetuation of the hostile educational environment based on harassment and bullying within NSCSD and BOE and all Defendants, Defendants' discriminatory disciplinary practices and procedures, Defendants' policies for investigating and disciplining employees, and Defendants' policy and practice of ignoring or retaliating against parents who assert their rights, violate rights guaranteed by the Fourteenth

Amendment to the United States Constitution as applied to the states and their political subdivisions under 42 U.S.C. § 1983 and the New York Constitution.

2.    Declare that Defendants' actions and inactions, including Defendants' perpetuation of a discriminatory educational environment, violate rights guaranteed by, the Civil Rights Law and the Americans with Disabilities

3.    For an order of the Court for supervised employee training and anti-bullying programs for all employees and students within NSCSD and BOE and all Defendants on a periodic basis at least four times during each school year.

4.    For an order of the Court for supervised oversight of the above-mentioned training and programs to ensure that the training and programs are realistically and truly implemented and enforced.

5.    For an order of the Court for supervised oversight of the implementation of programs aimed at preventing retaliation, bullying, harassment, intimidation and discrimination.

6.    For an order of the Court for supervised oversight of the seeking and obtaining of federal grant monies for necessary programs aimed at preventing bullying, harassment, intimidation and discrimination.

7.    For compensatory damages sustained by Plaintiff against all Defendants, jointly and severally, in an amount to be determined at trial.

8.    For punitive and exemplary damages according to proof against all Defendants, jointly and severally, in an amount to be determined at trial.

9.    For an award of prejudgment interest, costs, disbursements, attorney fees and expert fees.

10.        For injunctive relief in the form of an order requiring Defendants to preserve all

relevant documents, and an order preventing Defendants from discussing this

action with each other or their employees, agents, representatives, servants and

assigns, except with their respective counselor as otherwise necessary to comply

with document and discovery requests.

11.        Damages related to pain and suffering of Plaintiff;

12.        Damages to compensate Plaintiff as a result of the conduct of the Defendants;

13.        For such other and further relief as the Court deems equitable or appropriate

under the circumstances.

WHEREFORE, Plaintiffs demand judgment against Defendants, in an amount

permitted by this jurisdiction plus interest, the costs, attorney fees and disbursements of this

action, and such other and further relief this court deems just and proper.

Dated:     6/1/16
Katonah, NY

By:    _____
       Peter D. Hoffman, Esq. (PH-8306)
       Law Office of Peter D. Hoffman, PC
       200 Katonah Ave., 2d Floor
       Katonah, NY 10536
       (914) 232-2242          phone
       (914) 232-2245          facsimile
       pdh2@pdhoffmanlaw.com    e-mail

       Yifei He, Esq.
       Law Office of Peter D. Hoffman, P.C.
       200 Katonah Avenue
       Katonah, NY   10536
       Phone:        (914) 232-2242
       Facsimile:    (914) 232-2245
       Email:        yh@pdhoffmanlaw.com